UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| STEVEN CLARK, | ) | |
|---|---|---|
| Plaintiff, | ) ) ) | |
| v. | ) ) | Case No. 1:12-CV-173 CDP |
| MICHAEL J. ASTRUE,<br>Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) | |

## **MEMORANDUM AND ORDER**

This is an action under 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Steven Clark's application for disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* and for Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq*. Claimant Clark asserts claims that he is disabled because of a combination of impairments including problems with his left knee, shoulder, and wrists. The Administrative Law Judge (ALJ) concluded that Clark is not disabled and can be employed to do sedentary work. Clark appeals the decision denying his benefits. Because I conclude that the ALJ's decision is supported by substantial evidence, I will affirm the decision.

**Procedural History**

On May 1, 2009, Steven Clark filed an application for a Period of Disability, Disability Insurance Benefits, and Supplemental Security Income Payments. Clark alleged disability beginning August 17, 2008. The Social Security Administration initially denied the application on the grounds that Clark was not under a "disability" as defined by the Act. Thereafter, Clark filed a timely appeal and a request for hearing. A video hearing was held on June 28, 2011. On July 14, 2011, the Administrative Law Judge issued an opinion denying benefits. The Appeals Council of the Social Security Administration then denied Clark's request for review on September 6, 2012. The ALJ's decision thus stands as the final determination of the Commissioner.

**Evidence before the ALJ**

In August 2008, Clark injured himself while helping another mechanic put a front-end on a forklift. He fell and struck both his right shoulder and his left leg. Since his accident, Clark has been in and out of medical care up to the date of his hearing.

Clark testified that he could not stand more than 30 minutes, sit more than 30-40 minutes, or walk more than a couple of blocks at a time without his left leg becoming numb. He reported having difficulty bending, crawling, kneeling, lifting more than ten pounds, climbing more than 6-7 steps at a time, or grasping things as a result of bilateral hand weakness. Clark stated that he was able to feed,

dress and bathe himself, read, watch TV, swim for therapy, help an 8-year-old prepare for school each day, use Facebook and other internet sites on a computer, and drive about 20 miles a week. He also stated that he washed dishes, made beds, and did some laundry and cooking. However, his girlfriend did the vacuuming, mopping, sweeping, and grocery shopping. Clark reported no problems getting along with family members or any other people and reported that his concentration was good.

After hearing Clark's testimony at the hearing, the ALJ called a Vocational Expert. The Vocational Expert classified Clark's past work as heavy in exertion and skilled but with no usable transferable skills. In response to hypothetical questions, the Vocational Expert opined that although Clark could not perform his past relevant work because of physical limitations, there were substantial numbers of jobs that Clark could perform. The Vocational Expert stated that Clark could perform any of a total of about 3,200 sedentary jobs in the State of Missouri and 249,000 of the same jobs nationwide. The Vocational Expert identified these sedentary jobs as addressers, assemblers, and charge account clerks; all of which were consistent with the Dictionary of Occupational Titles (DOT) criteria in terms of exertion and skill requirements.

**Medical Records**

On the day of the accident, Clark received emergency room attention after injuring his ankle and knee. X-rays of the ankle showed no fracture. However, the knee was placed in a splint after an x-ray of the left knee showed an undisplaced left fibular fracture. On August 11, Clark first saw Brian C. Schafer, M.D. an orthopedist, who applied an immobilizer to the knee despite the fact that Clark was walking without difficulty at the time. On August 14, 2008, Clark had an MRI which showed the same fibular head fracture as well as a left lateral medial meniscus tear, a tear of the medial collateral ligament, and a tibial plateau contusion. Clark was prescribed Vicodin as a pain medication by Dr. Schafer and was authorized to get regular refills through February 2009. He was also given a control motion knee brace which was gradually adjusted to allow Clark greater motion of his left knee as the pain improved. Dr. Schafer instructed Clark to stay off of his usual job pending further treatment.

Clark alleged shoulder pain on September 19, 2008 after using crutches for just over a month. (He had previously has surgery on that shoulder from an earlier injury). Clark had an MRI of the shoulder on September 26. The MRI showed no rotator cuff tear or labral injury. Dr. Schafer administered an injection for what he referred to as right shoulder tendinitis on October 3, 2008.

Clark reinjured his left knee on October 10, 2008 when he slipped on a driveway. He had an x-ray which showed that the previous fracture, sustained during the forklift accident, had healed. When he saw his doctor on October 17,

the doctor reduced the range of motion on the knee brace, and said that therapy on the shoulder could stop as he had no shoulder pain complaints. On December 9, 2008, Dr. Schafer increased the Clark's knee brace to full motion allowance and on December 30, 2008, Dr. Schafer changed Clark's brace from a long leg brace to a short hinged one.  Dr. Schafer instructed Clark to get physical therapy three times a week and to do nothing more than sedentary work.  On January 20, 2009, Dr. Schafer told Clark that he could do light duty. Then, on February 10, 2009, Dr. Schafer recommended a two-week course of work hardening to try to restore Clark to where he could resume his usual maintenance worker job.  However, Clark never saw Dr. Schafer after that date.  Clark failed to show for the scheduled follow-up appointment on February 24, 2009.

On June 24, 2009, Clark began seeing Stefan Scheidler, M.D.  On that visit he reported left leg and right shoulder pain, tingling in his left foot, and new complaints of lower back pain.  Clark was prescribed pain medication by Dr. Schiedler.  On July 8, 2009, Clark reported to Dr. Scheidler that he was "under stress," but Dr. Scheidler prescribed no additional medication for anxiety.  On July 31, 2009, Clark had an x-ray of the lumbosacral spine which showed only minimal osteoarthritic lipping.  On, August 20, 2009, Clark had additional x-rays.  One x-ray of the back showed only minimal or early degenerative changes to L2-L3 and another x-ray of the knee was negative.

Clark saw Barry Burchett, M.D., for a disability determination physical examination on September 15, 2009. Dr. Burchett reported that he had little trouble with the left knee although he had some pain on steps. Clark reported a history of Carpal tunnel problems but Dr. Burchett found no loss of grip strength or digital dexterity for gross or fine movements in either hand nor any limited range of motion in any spinal or joint area nor any signs of nerve root compression or neurological deficit of the back. There was also no evidence of any heart disease. Dr. Burchett said that Clark described symptoms of fairly significant carpal tunnel syndrome, but all other physical signs and test results were normal or better.

On April 9, 2010, Clark saw Dr. Michael P. Rogalski, M.D., an orthopedic surgeon. He reported right shoulder and left knee pain to Dr. Rogalski. To combat this pain, Dr. Rogalski started Clark on a physical therapy course. Clark underwent arthroscopic surgery for his right shoulder on May 13, 2010. Following surgery, Dr. Rogalski instructed Clark to restrict himself to sedentary work and prescribed him Vicodin. He also told Clark that if he was to wear a shoulder sling he could participate in light work. By June 29, 2010, Dr. Rogalski had redacted all limitations he had placed on Clark following surgery and allowed Clark to do full duty with his right shoulder. The one limitation was Clark was instructed not to lift more than thirty pounds.

Clark underwent surgery on his left knee for a torn anterior cruciate ligament on July 15, 2010. As of July 20, 2010, Dr. Rogalski instructed Clark to only do

seated work. On August 19, 2010, Dr. Rogalski limited claimant to lifting no more than 20 pounds. He also stated that Clark should not squat or climb. However, Clark had full range of motion in his right shoulder as of that date and reported only mild discomfort in his left knee. On September 3, 2010, Dr. Rogalski had to do an aspiration on Clark's left knee to remove some drainage.

On October 20, 2010, Clark reported to Dr. Scheidler that he had numbness in his hands and legs as well as headaches and insomnia. Clark had an MRI of the lumbosacral spine on November 8, 2010 which showed some degenerative disc disease and osteophyte formation at L5-S1 and minimal facet arthritis at L4-L5, but no evidence of disc herniation, spinal stenosis or nerve root impingement or compression. On November 22, 2010, Clark reported to Dr. Scheidler that he had pain in his back and left shoulder as a result of lifting an air conditioning unit. On December 2, 2010 he reported no change in his back pain, increased severity of his headaches, as well as a burning sensation in his right hand.

Clark was referred to Su Kin Mo, M.D. by Dr. Scheidler. Dr. Mo, a pain management specialist, began seeing Clark on December 9, 2010. Dr. Mo administered an epidural pain injection to the L5-S1 disc space on December 22, 2010. On December 23, 2010, Dr. Mo reported that Clark was doing well with his medications.

Clark was prescribed C-PAP therapy for sleep apnea following diagnostic sleep study tests on February 6 and February 27 of 2011. On March 1, 2011, he underwent release surgery for left carpal tunnel syndrome. Between March 14, and March 18 of 2011 he was treated for a left hand abscess.

On July 27, 2011, Dr. Scheidler indicated that Clark could not do even sedentary work for a sustained basis on a form questionnaire submitted by Clark's attorney. Dr. Scheidler stated that Clark's various chronic pains and other symptoms combined with his prescribed medications that might cause him to become drowsy would keep him from such work. However, Dr. Scheidler did not indicate the date on which he last saw Clark to make this analysis.

**Legal Standard**

A court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the records as a whole. *See Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008); *Growell v. Apfel*, 2542 F.3d 793, 796 (8th Cir. 2001). Substantial evidence is less than a preponderance, but is enough that a reasonable person would find it adequate to support the ALJ's conclusion. *Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). As long as there is substantial evidence on the record to support the Commissioner's decision, a court may not reverse because substantial evidence exists in the record that would have supported a contrary outcome, *id.*, or because the court would have decided the case

8

differently. *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992). Evidence that supports as well as evidence that detracts from the ALJ's decision should be considered. *See Finch* 547 F.3d at 925.

To determine whether the decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

1. the credibility of the findings made by the Administrative Law Judge;
2. the education, background, work, and age of the claimant;
3. the medical evidence from treating and consulting physicians;
4. the plaintiff's subjective complaints relating to extertional and nonextertional impairments;
5. any corroboration by third parties of the plaintiff's impairments; and
6. the testimony of vocational experts when required which is based upon a proper hypothetical question.

*Brand v. Secretary of Dep't of Health, Educ. & Welfare*, 623 F.2d 523, 527 (8th Cir. 1980).

When evaluating evidence of subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir.1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan,*

992 F.2d 657, 660 (8th Cir.1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler,* 739 F.2d 1320 (8th Cir.1984), which include:

> claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the objective medical evidence; (2) the subjective evidence of the duration, frequency, and intensity of plaintiff's pain; (3) any precipitating or aggravating factors; (4) the claimant's daily activities; (5) the dosage, effectiveness and side effects of any medication; and (6) the claimant's functional restrictions.

*Id.* at 1322.

### The ALJ's Findings

The ALJ issued the following specific findings:

1. The claimant met the special earnings requirements of the Act as of August 17, 2008, the alleged onset of disability, and continues to meet them through the date of this decision.
2. The claimant has not engaged in substantial gainful activity since August 17, 2008. He did resume work for a short while in 2009, but that work did not constitute substantial gainful activity in terms of duration of employment.

3. The medical evidence establishes that the claimant has status-post right shoulder arthroscopic surgery, status-post left knee fracture and torn anterior cruciate ligament, status-post left carpal tunnel syndrome, mild degenerative disease of the lumbosacral spine, and recently-diagnosed sleep apnea controlled by therapy, but no specifically-diagnosed mental impairment and no impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's allegations of impairments, either singly or in combination, producing symptoms and limitations of sufficient severity to prevent the performance of any sustained work activity is not credible, for the reasons set out in the body of this decision.

10

5. The claimant has the residual functional capacity to perform the physical exertional and nonexertional requirements of work except probably for doing prolonged or frequent standing or walking; lifting or carrying objects weighing more than 10 pounds; climbing of ropes, ladders or scaffolds; doing more than occasional climbing or ramps and stairs or more than occasional balancing, stooping, kneeling, crouching, or crawling; doing more than occasional overhead reaching with the right upper extremity; or having concentrated or excessive exposure to unprotected heights or dangerous moving machinery. There are no credible, medically-established mental or other nonextertional limitations (20 CFR 404.1545 and 416.945).

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant's residual functional capacity for the full range of at least sedentary work is reduced by the limitations described in Finding No. 5.

8. The claimant is 42 years old, defined as a younger individual (20 CFR 404.1563 and 416.963).

9. The claimant is a high school graduate (20 CFR 404.1564 and 416.964).
10. The claimant has acquired but not usable skills transferable to the skilled or semi-skilled functions of other work (20 CFR 404.156 and 416.96).

11. Based on extertional functional capacity for at least sedentary work, and the claimant's age, education, and work experience, 20 CFR 404.1569 and 416.969 and Rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Although the claimant's limitations do not allow the performance of the full range of sedentary work, there is, using the above-cited Rule as a framework for decision-making, a significant number of jobs in the local and national economies which the claimant could perform. Examples of such jobs are any of a total of about 3200 sedentary jobs in the State of Missouri and 249,000 of the same jobs nationwide as an addresser, assembler, and charge account clerk, according to vocational expert opinion.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

**Discussion**

When reviewing a denial of Social Security benefits, a court cannot reverse an ALJ's decision simply because the court may have reached a different outcome, or because substantial evidence might support a different outcome. *Jones ex rel. Morris v. Barnhart,* 315 F.3d 974, 977 (8th Cir.2003); *Woolf v. Shalala,* 3 F.3d 1210, 1213 (8th Cir.1993). Rather, the court's task is a narrow one: to determine whether there is substantial evidence on the record as a whole to support the ALJ's decision. 42 U.S.C. § 405(g); *Estes v. Barnhart,* 275 F.3d 722, 724 (8th Cir.2002). The answer to that question is yes.

First, Clark argues that because of his injuries he should have been entitled to a closed period of disability and therefore the ALJ decision is not supported by substantial evidence. Clark argues that the ALJ should have considered his impairments as a whole instead of taking each injury and assessing it separately. However, the ALJ did acknowledge that Clark had multiple serious injuries and did take all the injuries into consideration as a whole but still concluded that no closed period of disability was necessary. Clark reports that he continuously complained of chronic left knee, left leg, shoulder, and carpal tunnel symptom induced pain but that continuousness was not reflected in the discontinuous treatment Clark sought.

It was the ALJ's problem with the exaggeration of Clark and the gaping holes in the treatment timeline that led to the ALJ's conclusion that there should be

no period of disability. When evaluating evidence of subjective complaints, the ALJ is never free to ignore the subjective testimony of the plaintiff, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler,* 725 F.2d 1166, 1169 (8th Cir.1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See, e.g., Battles v. Sullivan,* 992 F.2d 657, 660 (8th Cir.1990). In this case, the ALJ believed that Clark's subjective testimony is exaggerated. This belief is supported with substantial evidence.

Second, Clark argues that the ALJ erred in discrediting the opinion of Dr. Scheidler. As stated in *Goff v. Barnhart*, "'[A] treating physician's opinion is given controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence.'" *Goff v. Barnhart,* 421 F.3d 785, 789 (8th Cir.2005) (quoting *Reed v. Barnhart,* 399 F.3d 917, 920 (8th Cir.2005) (internal marks omitted)). However, "'A treating physician's opinion does not automatically control, since the record must be evaluated as a whole.'" *Id.* (quoting *Bentley v. Shalala,* 52 F.3d 784, 786 (8th Cir.1995) (internal marks omitted)). "An ALJ may 'discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" *Id.* (quoting *Prosch v. Apfel,* 201 F.3d 1010, 1013 (8th Cir.2000)).

The ALJ in this case adequately explained his reasoning for discounting Dr. Scheidler's opinion. First, Dr. Scheidler's opinion in response to the lawyer's request is inconsistent with anything Dr. Scheidler had said before that as well as with all of the records from Dr. Schafer, Dr. Rogalski, and Dr. Mo. Second, in the opinion, Dr. Scheidler failed to indicate when he last saw Clark and there is no evidence that Dr. Scheidler had seen Clark since March 2011. The conclusion of the ALJ to discredit this assertion is supported by substantial evidence.

Third, Clark argues that the ALJ erred when concluded that Clark retained the residual functional capacity to perform sedentary work activity. However, the ALJ based his conclusion on statements made by the vocational expert, based on an accurate assessment of Clark's impairments, age, education, and work experience. The ALJ took into consideration Clark's exaggeration of some of his complaints, his infrequent visits to the doctor and his testimony as to his daily activities which, although restricted, are consistent with his ability to do sedentary work. These conclusion are supported by the evidence.

## Conclusion

Remand is unnecessary because the record contains substantial evidence supporting the finding that Clark retains the residual functional capacity to perform available sedentary work despite his impairments. Clark's remaining arguments are without merit. The ALJ properly posed hypotheticals to the vocational expert and

adequately considered the effects of all Clark's impairments that the ALJ found credible. The Commissioner, therefore, met his burden of proving that Clark was capable of performing other jobs in the national economy that are consistent with Clark's medically determinable impairments, age, education, and work experience.

For the aforementioned reasons, the ALJ's determination that Steven Clark was not disabled is supported by substantial evidence in the record as a whole.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is affirmed. A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 18th day of February, 2014.